Wayne A. Koch and Frederick C. Hammer, Jr., Appellants *v.* Bellefonte Area School District, Appellee.

Argued March 1, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr.; Mencer, Rogers, Blatt and DiSalle.

*Michael S. Ramage,* with him *Spencer, Gleason & Hebe,* for appellants.

*John R. Miller, Jr.,* with him *Miller, Kistler & Campbell, Inc.,* for appellee.

*Michael I. Levin,* with him *William Fearen,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

Opinion by Judge Blatt, July 7, 1978: .

Wayne A. Koch and Frederick C. Hammer (appellants) appeal here from an order of the Court of Common Pleas of Centre County which enjoined the arbitration of two grievances filed by the appellants against the Bellefonte Area School District (district).

The appellants are members of the Bellefonte Area Education Association (association), which went out on strike between September 11 and 26, 1972. Twelve instructional days were lost from the 1972-73 school year as a result. The appellants filed the grievances at issue in April and June of 1973, and both grievances alleged that the district's decision not to reschedule

the instructional days lost in the strike violated the collective bargaining agreement (agreement) between the parties which stated that the school year would consist of 182 days. Both grievances proceeded through four of the five steps specified in the agreement's grievance procedure with the district denying the grievances at each step. The appellants then requested that the dispute be submitted to arbitration as provided in step five of the procedure and asked the Bureau of Mediation of the Pennsylvania Department of Labor and Industry to supply a list of arbitrators from which the parties could choose. An arbitrator was chosen and an arbitration hearing was subsequently scheduled.

Prior to the arbitration hearing, however, the district filed a complaint in equity with the Court of Common Pleas of Centre County requesting it to preliminarily enjoin the arbitration of the grievances. The preliminary injunction was granted by the lower court after a hearing. In two subsequent actions, the lower court first refused to permanently enjoin the arbitration and dissolved its preliminary injunction and secondly considered the merits of the district's complaint and held essentially that the grievances were not a proper subject for arbitration under the parties' agreement. We do not believe that the lower court had jurisdiction here to prevent arbitration of the grievances.

This Court has recently held in a case similar to the present one that a court of common pleas lacks equity jurisdiction to enjoin arbitration which arguably involves an unfair labor practice. *See School District of Penn Hills v. Penn Hills Educational Association,* 34 Pa. Commonwealth Ct. 507, 383 A.2d 1301 (1978). Our holding in *Penn Hills, supra,* relied on our Supreme Court's decision in *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976), wherein

the Court construed the language of Section 1301 of the Public Employe Relations Act,[1] (PERA) 43 P.S. §1101.1301,[2] to mean that "if a party directly seeks redress of *conduct which arguably constitutes one of the unfair labor practices* listed in Article XII (Section 1201) of the PERA, 43 P.S. §1101.1201 (Supp. 1976), *jurisdiction* to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is *in the PLRB* [Pennsylvania Labor Relations Board], and nowhere else." *Hollinger, supra,* 469 Pa. at 366, 365 A.2d at 1249. (Emphasis added.) Noting our prior recognition that a failure to submit a grievance to arbitration is a failure to discuss the grievance and hence constitutes a Section 1201(a)(5) unfair labor practice charge,[3] we concluded in *Penn Hills* that the school district's actions in seeking to enjoin arbitration mandated by PERA was conduct arguably constituting an unfair labor practice and that jurisdiction over the matter lay with the PLRB.

The same reasoning would seem to apply here. The controversy here, which concerns the number of days in the 1972-73 school year, is arguably a grievance,[4] and a refusal to arbitrate this grievance or an attempt

---

[1] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.101 et seq.

[2] Section 1301 provides in pertinent part:

The board is empowered . . . to prevent any person from engaging in any unfair practice listed in Article XII of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.

[3] *See Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board,* 30 Pa. Commonwealth Ct. 403, 373 A.2d 1175 (1977).

[4] Article 6 of the agreement provides:

The regular teaching contract for members of the bargaining unit will be 182 days.

to circumvent the arbitration process would arguably be an unfair labor practice. In effect, the lower court was asked to decide whether or not the association was attempting to arbitrate something that was not a grievance under the agreement or, in the alternative, whether or not the district was required to submit the controversy to arbitration. It was called upon to examine the conduct of both parties so as to determine whether or not what either of them did could arguably constitute an unfair labor practice as described in Section 1201 of PERA. In light of the exclusive jurisdiction given to the PLRB in these matters by Section 1301 of PERA, therefore, the lower court had no jurisdiction to act here and we must therefore reverse its order.

ORDER

AND Now, this 7th day of July, 1978, the order of the Court of Common Pleas of Centre County, numbered 4 October Term, 1973 (Equity) and dated March 17, 1977, is hereby reversed.

---

A grievance is defined in the parties' agreement as follows:
A grievance shall mean a complaint made by a member or members of a bargaining unit which involves the interpretation or application of the terms of the agreement.