# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Community College of Philadelphia, | : |
| | : |
| Appellant | : |
| | : |
| v. | : No. 1729 C.D. 2017 |
| | : Argued: November 15, 2018 |
| Faculty and Staff Federation of the Community College of Philadelphia, Local 2026, AFT, AFL-CIO | : |

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE WOJCIK                              FILED:  March 12, 2019

Community College of Philadelphia (College) appeals from a final order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the Faculty and Staff Federation of the Community College of Philadelphia, Local 2026, AFT, AFL-CIO's (Union) preliminary objections (POs) and dismissing the College's Complaint in Equity (Complaint) for lack of subject matter jurisdiction. The College asserts that the trial court erred because redress for the alleged partial strike falls under the trial court's equitable jurisdiction under the Pennsylvania Public Employe Relations Act (PERA).[1] For the reasons that follow, we reverse and remand.[2]

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

[2] This case was argued seriately with *Community College of Philadelphia v. Pennsylvania Labor Relations Board* (Pa. Cmwlth., No. 613 C.D. 2017) (*Community College*). *Community College* involved the College's appeal from a decision of the Pennsylvania Labor Relations Board

## I. Background

On September 15, 2017, the College filed a Complaint and a Petition for Preliminary Injunction requesting the trial court to enjoin the Union's partial strike pursuant to Section 1003 of the PERA, 43 P.S. §1101.1003. The College asserted that the full-time faculty's refusal to perform required assessment work constituted a strike that met Section 1003's "clear and present danger" standard.

The College is a "public employer" within the meaning of Section 301(1) of the PERA, 43 P.S. §1101.301(1). The Union is an "employe organization" under Section 301(3) of the PERA, 43 P.S. §1101.301(3), representing full-time faculty at the College, among others. The College and the Union are parties to a collective bargaining agreement (CBA), which expired on August 31, 2016. The parties continue to operate under the terms of the expired agreement, with Union-represented faculty continuing to receive full pay and benefits. The parties are currently in negotiations for a successor agreement under the supervision of the Bureau of Mediation. Reproduced Record (R.R.) at 10a-11a.

The College is an open admission institution serving the Philadelphia area and approximately 30,000 students each year, offering associate degrees and academic and proficiency certificates. The College alleged that, in order for it to maintain its accreditation, the Middle States Commission on Higher Education requires the College to engage in a continuous cycle of assessment of student learning outcomes and to use the results of the assessment to improve and update courses, curricula, teaching methods and student learning. These assessments

(Board) declining to issue a complaint and dismissing the College's charge of unfair labor practices filed against the Union. The College charged that the Union's instruction to its members to refuse to perform mandated assessment work and its members' refusal to perform mandated assessment work constituted a failure to bargain in good faith in violation of Section 1201(b)(3) of the PERA, 43 P.S. §1101.1201(b)(3). The Board concluded that the legality of a strike falls within the trial court's jurisdiction, not the Board's. *Community College*.

require full-time faculty to examine and review courses and curricula to ensure students are meeting established course, program and institutional level learning outcomes. The performance of assessment work is a professional responsibility of each full-time faculty member and a required duty under the expired CBA and past practice. R.R. at 12a-14a.

The College asserted that the failure of full-time faculty members to complete and submit the required assessments places the College's accreditation in jeopardy. Without accreditation, the College would lose federal and certain state funding. Additionally, the College's students would no longer be eligible for federal and state financial aid, including Pell grants, because that aid is conditioned on a student attending an accredited institution. Further, without the assessments, the College would be unable to adequately assess whether students are achieving the learning objectives of courses and programs. R.R. at 14a.

The College alleged that, in the 2012-2013 academic year, during ongoing negotiations for the parties' previous CBA, the Union instructed faculty to refuse to perform assessments. As a result, the College received a formal written notice from the Middle States Commission that its accreditation may be in jeopardy. The College remained on warning until early 2016, when full-time faculty resumed performing assessments on a continuing basis. R.R. at 15a.

The College further alleged that, beginning in November 2016, and continuing through the present, the Union once again instructed full-time faculty to refuse to perform mandated assessment work, while continuing to accept full pay and benefits. The College demanded the Union to cease and desist from instructing full-time faculty to refuse to perform assessment work while receiving full pay and benefits. The Union did not stop. Full-time faculty are refusing to perform

3

assessments.  The College claims that this concerted refusal to perform assessment work constitutes a partial strike.  R.R. at 15a-16a.

The College requested an injunction of the partial strike because it is creating a clear and present danger or threat to the health, safety or welfare of the public in violation of Section 1003 of the PERA.  The College claimed that the partial strike threatens the College's accreditation, which if lost, would likely cause the College to cease operations.  Such a loss threatens the health, safety and welfare of the public by jeopardizing the community's access to affordable higher education, decreasing the number of skilled workers entering the labor force and reducing tax revenue for the City of Philadelphia.  R.R. at 17a-22a.

The College requested the trial court to enjoin the Union and its members from refusing to perform the required assessment work; to order the full-time faculty to complete all forms of required assessment work immediately; and to order the Union to terminate the partial strike and direct all full-time faculty to return to the full performance of their duties, including assessment work.  R.R. at 22a.

In response, the Union filed POs, which included a challenge to the trial court's subject matter jurisdiction.[3]  Specifically, the Union asserted that the Board has exclusive jurisdiction over the College's Complaint because the College seeks redress of Union conduct, which arguably constitutes an unfair labor practice under Section 1301 of the PERA, 43 P.S. §1101.1301.  R.R. at 139a, 142a-43a.  The Union alleged that the performance of assessment work has always been a voluntary activity by full-time faculty.  R.R. at 5a.  Further, the Union asserted that the College already filed a charge with the Board asserting that the very same conduct constituted

---

[3] The Union also objected to the Complaint on the grounds of legal insufficiency, pendency of a prior action and failure to exhaust a statutory remedy.  R.R. at 135a.

4

an unfair labor practice, and as a result, should be precluded from proceeding in the trial court.[4]  R.R. at 4a-5a.

The trial court sustained the Union's POs on subject matter jurisdiction, dismissed the College's Complaint, and ruled that the College's Petition for Preliminary Injunction was moot.  From this decision, the College timely appealed to this Court.  The College filed a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(b), as directed by the trial court.  The trial court filed an opinion in support of its order.

In the Pa. R.A.P. 1925(a) opinion, the trial court concluded that it lacked subject matter jurisdiction because the College had already filed an unfair labor practice charge with the Board raising the same issues based on the same conduct.  The gravamen of the College's Complaint is that of an unfair labor practice because it involves questions of whether completion of assessment work by full-time faculty is voluntary or mandatory and whether the College can unilaterally impose this requirement during ongoing negotiations, thereby altering the status quo.  The Board has exclusive jurisdiction to prevent any person from engaging in an unfair labor practice under Section 1301 of the PERA.  Therefore, the trial court concluded that the College's Complaint properly belongs in the Board's exclusive jurisdiction.

---

[4] The Union itself also filed a charge with the Board, citing violations under Section 1201(a) of the PERA, on the basis that the College altered the status quo by mandating the performance of assessment work during negotiations and threatened to subject full-time faculty members who refused to perform assessment work to negative performance evaluations and disciplinary actions.  R.R. at 138a.  The Board issued a complaint on the Union's charge, but dismissed the College's charge upon concluding that the trial court has exclusive jurisdiction over the alleged strike.  *See Community College*; *see also* R.R. at 138a.

## II. Issue

On appeal,[5] the College contends that the trial court erred in determining it did not have subject matter jurisdiction over the College's Complaint. Section 1003 of the PERA expressly grants the courts jurisdiction to enjoin strike activity that poses a clear and present danger or a threat to the health, safety and welfare of the public. In its Complaint, the College alleged that its full-time faculty is engaged in a partial strike that poses a clear and present danger or a threat to the health, safety and welfare of the public. The College claims that the trial court disregarded its statutory duty to determine whether the faculty is on strike, and whether that strike should be enjoined.

## III. Discussion

The courts and the Board play separate roles in the adjudication of matters arising under the PERA. To wit, the courts have equity jurisdiction over strikes prohibited under Article X of the PERA. Sections 1001, 1002 and 1003 of the PERA, 43 P.S. §§1101.1001, 1101.1002, 1101.1003; *see Armstrong School District v. Armstrong Education Association*, 595 A.2d 1139, 1143 (Pa. 1991) (Section 1003 of the PERA confers equity jurisdiction upon the common pleas court

---

[5] Our review of a trial court's order sustaining or denying POs is limited to determining whether the trial court erred or abused its discretion. *Minor v. Kraynak*, 155 A.3d 114, 121 (Pa. Cmwlth. 2016). "When considering preliminary objections, we must accept as true all well-pleaded material facts alleged in the complaint and all reasonable inferences deducible therefrom." *Id.* "A preliminary objection should be sustained only in cases when, based on the facts pleaded, it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief." *Id.* "When preliminary objections raise a question of subject matter jurisdiction, '[t]he trial court's function is to determine whether the law will bar recovery due to a lack of subject matter jurisdiction.'" *Mazur v. Trinity Area School District*, 926 A.2d 1260, 1265 (Pa. Cmwlth. 2007), *aff'd*, 961 A.2d 96 (Pa. 2008) (quoting *Kimmel Township Taxpayers Association v. Claysburg Kimmel School District*, 604 A.2d 1149, 1152 (Pa. Cmwlth. 1992)).

once a public employer seeks relief from a strike); *City of Scranton v. Pennsylvania Labor Relations Board*, 505 A.2d 1360, 1363 (Pa. Cmwlth. 1986) (a contest as to the validity or legality of a strike is reserved for the courts).  On the other hand, the Board has exclusive jurisdiction where the alleged acts forming the basis of a complaint constitute unfair labor practices under Section 1201 of the PERA.[6] Section 1301 of the PERA, 43 P.S. §1101.1301[7]; *Hollinger v. Department of Public Welfare*, 365 A.2d 1245, 1248-49 (Pa. 1976).

---

[6] Notably, prohibited unfair labor practices include strikes, but in limited contexts, which have not been asserted here:

> (6) Calling, instituting, maintaining or conducting a strike or boycott against any public employer or picketing any place of business of a public employer *on account of any jurisdictional controversy*.

> (7) Engaging in, or inducing or encouraging any individual employed by any person to engage in a strike or refusal to handle goods or perform services; or threatening, coercing or restraining any person where an object thereof is *to (i) force or require any public employer to cease dealing or doing business with any other person or (ii) force or require a public employer to recognize for representation purposes an employe organization not certified by the board.*

43 P.S. §1101.1201(b)(6)-(7) (emphasis added).

[7] Specifically, Section 1301 of the PERA provides:

> The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair practice listed in Article XII of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.

43 P.S. §1101.1301.

The starting point in a consideration of whether the trial court has jurisdiction is whether the remedy sought is redress of a strike under Sections 1001, 1002 or 1003 of the PERA. Section 301(9) of the PERA defines a "strike" as:

> [C]oncerted action in failing to report for duty, the wilful absence from one's position, the stoppage of work, slowdown, *or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment* for the purpose of inducing, influencing or coercing a change in the conditions or compensation or the rights, privileges, or obligations of employment.

43 P.S. §1101.301(9) (emphasis added). Article X of the PERA governs strikes and directs public employers to seek relief from strikes in the courts. Sections 1001, 1002 and 1003 of the PERA, 43 P.S. §§1101.1001, 1101.1002, 1101.1003.

Specifically, Section 1001 of the PERA prohibits strikes by guards at prisons or mental hospitals or employees directly involved with the functioning of the courts. 43 P.S. §1101.1001. "If a strike occurs[,] the public employer shall forthwith initiate *in the court of common pleas of the jurisdiction where the strike occurs,* an action for appropriate equitable relief including but not limited to injunctions." *Id.* (emphasis added). If the strike involves Commonwealth employees, the action may be filed in the Commonwealth Court. *Id.*

Section 1002 prohibits strikes during negotiation and mediation, providing:

> Strikes by public employes during the pendency of collective bargaining procedures set forth in sections 801 and 802 of Article VIII are prohibited. In the event of a strike during this period the public employer shall forthwith initiate an action for *the same relief and utilizing the same procedures required for prohibited strikes under section 1001*.

8

43 P.S. §1101.1002 (emphasis added).

Of relevance here, Section 1003 of the PERA permits a strike after certain conditions are met provided it does not create a clear and present danger or threat to the health, safety or welfare of the public. 43 P.S. §1101.1003. Specifically, Section 1003 provides:

> If a strike by public employes occurs *after the collective bargaining processes set forth in sections 801 and 802 of Article VIII of this act have been completely utilized and exhausted, it shall not be prohibited unless or until such a strike creates a clear and present danger or threat to the health, safety or welfare of the public. In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an action for equitable relief including but not limited to appropriate injunctions and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. . . .* Hearings shall be required before relief is granted under this section and notices of the same shall be served in the manner required for the original process with a duty imposed upon the court to hold such hearings forthwith.

*Id.* (emphasis added). Partial or selective strikes fall within the purview of Section 1003 and may be enjoined if they create a clear and present danger or threat to the health, safety and welfare of the public. *Wilkes-Barre Area Education Association v. Wilkes-Barre Area School District of Luzerne County*, 523 A.2d 1183, 1185 (Pa. Cmwlth. 1987).

Further, Section 1006 of the PERA provides: "No public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike." 43 P.S. §1101.1006. Where a public employer complains that the striking public employees received compensation during the strike in violation of Section 1006 of the PERA, jurisdiction over the dispute lies in the trial court. *See*

9

*Woodland Hills Education Association, PSEA/NEA v. Woodland Hills School District*, 508 A.2d 365, 366 (Pa. Cmwlth. 1986) (court of common pleas considered the school district's declaratory judgment action seeking reimbursement for payments made for benefits paid to teachers during their strike under Section 1006 of the PERA). Conversely, where a public employee complains that the public employer unlawfully engaged in self-help by withholding accrued wages or other compensation from striking public employees, it is an unfair labor practice within the meaning of Section 1201(a)(1) of the PERA,[8] and falls within the jurisdiction of the Board. *Philipsburg-Osceola Education Association v. Philipsburg-Osceola Area School District*, 633 A.2d 220, 224 (Pa. Cmwlth. 1993), *appeal discont'd*, 637 A.2d 294 (Pa. 1994); *Bailey v. Ferndale Area School District*, 454 A.2d 207, 210 (Pa. Cmwlth. 1982).

The trial court and the Union both rely on *Hollinger* for the proposition that the trial court lacked jurisdiction over the matter because the College's Complaint arguably constitutes an action for redress of unfair labor practices falling within the Board's jurisdiction. In *Hollinger*, a group of public employees filed complaints in equity in this Court's original jurisdiction against their public employers to enjoin payroll deductions for union dues and to recover the amount of dues already deducted. In response, the public employers filed POs challenging our subject matter jurisdiction and arguing that the employees' claims belonged before the Board. We disagreed and overruled the POs.

---

[8] This section prohibits public employers from "[i]nterfering, restraining or coercing employes in the exercise of rights guaranteed in Article IV of this act," which includes the right to strike. 43 P.S. §1101.1201(a)(1); *see* Section 401 of the PERA, 43 P.S. §1101.401 (employee rights).

10

On appeal, the Supreme Court reversed. *Hollinger*, 365 A.2d at 1251. The Supreme Court determined that the alleged unauthorized withholding of dues arguably constitutes unlawful labor practices listed under Sections 1201(a)(1) and (b)(1) of the PERA. *Id.* at 1249. The Court held that the Board, not the courts, have exclusive subject matter jurisdiction over unfair labor practices pursuant to Section 1301 of the PERA. *Id.* at 1248-49. The Supreme Court opined, "if a party directly seeks redress of conduct which arguably constitutes one of the unfair labor practices listed in Article XII (Section 1201) of the PERA, . . . jurisdiction to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is in the [Board], and *nowhere else*." *Id.* at 1249 (emphasis added).

Since *Hollinger*, the Courts have consistently held that a dispute regarding an arguably unfair labor practice lies only with the Board. *See, e.g.*, *Municipal Employees Organization of Penn Hills v. Municipality of Penn Hills*, 876 A.2d 494, 499 (Pa. Cmwlth.), *appeal denied*, 890 A.2d 1062 (Pa. 2005) (whether an employer's refusal to process employee's grievance based on last chance agreement was an alleged unfair practice in the Board's jurisdiction); *Hotel and Restaurant Employees International Union Local No. 391-AFL-CIO v. School District Allentown City*, 702 A.2d 16, 17 (Pa. Cmwlth. 1997) (the Board, not the common pleas court, has exclusive jurisdiction over a charge that the public employer refused to comply with a binding arbitration award, which is an unfair labor practice under Section 1201(a)(8) of the PERA, 43 P.S. §1101.1201(a)(8)); *School District of Penn Hills v. Penn Hills Educational Association*, 383 A.2d 1301, 1303 (Pa. Cmwlth. 1978) (common pleas court did not have jurisdiction to enjoin an arbitration process between a teachers' association and school district concerning the association's

11

alleged grievance as such arguably constituted an unfair labor practice under Section 1201(a)(5)).

However, *Hollinger* and its progeny are not strike cases. These cases do not limit or even discuss the court's jurisdiction over strikes as expressly authorized under Article X of the PERA. *See Hollinger; Municipal Employees*; *Hotel and Restaurant Employees*; *School District of Penn Hills*.

Notably, *Hollinger* did recognize an exception to the Board's exclusive jurisdiction over unfair labor practice cases for actions sounding in contract. The Supreme Court declared, in *dicta*, that the Board's exclusive jurisdiction over unfair labor practice cases "does not, of course, divest a court of jurisdiction to entertain suits for *breach of contract* merely because the alleged breach may arguably be an unfair labor practice." *Hollinger*, 365 A.2d at 1249 n.10 (emphasis in original). Later, in *City of Philadelphia v. District Council 33, American Federation of State, County and Municipal Employees, AFL-CIO*, 598 A.2d 256, 259 (Pa. 1991), the Supreme Court applied this very principle.

In *City of Philadelphia*, the union filed suit with the common pleas court to enjoin the city from enforcing its ordinance on the basis it detrimentally changed the parties' pension plan under their CBA. The trial court granted injunctive relief. The city appealed, claiming that the Board had exclusive jurisdiction over the union's complaint because it involved a labor dispute over the city's failure to bargain collectively in good faith with the union about the new pension system under Section 1201(a)(5) of the PERA. The union argued that its complaint did not assert an unfair labor practice, but rather a breach of contract claim and that jurisdiction belonged in the common pleas court. The Supreme Court, citing *Hollinger*, held that the complaint clearly alleged a breach of contract claim and that

12

the common pleas court exercised proper jurisdiction over the matter. *City of Philadelphia*, 598 A.2d at 259.

It is our view that the present case falls within the *Hollinger* exception. Just as the courts of common pleas have jurisdiction to hear breach of contract claims, they also have jurisdiction to enjoin prohibited strikes pursuant to Sections 1001, 1002 and 1003 of the PERA. A court of competent jurisdiction is not divested of its jurisdiction merely because the allegations involved may arguably be an unfair labor practice. *See City of Philadelphia; Hollinger*. To conclude otherwise would implicitly abrogate the express power given to the courts to grant equitable relief to public employers when public employees engage in prohibited strikes under Sections 1001, 1002 and 1003 of the PERA. *See* Section 1922(a)(2) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1922(a)(2) (General Assembly intends the entire statute to be given effect); *Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission*, 198 A.3d 1056, 1071 (Pa. 2018) (courts "are required to interpret or construe a statute so as to give effect to all of its provisions, 'if possible'").

Upon review, the allegations and relief requested squarely place the College's Complaint within the trial court's jurisdiction under the PERA. The College filed its Complaint to enjoin a partial strike under Section 1003 of the PERA. In support, the College alleged that the full-time faculty are required to perform assessment work. R.R. at 13a. The Union is instructing its members to refuse to perform required assessment work. R.R. at 15a. In accord therewith, the members are refusing to perform assessment work, while continuing to receive full pay and benefits. R.R. at 15a. The College further alleged that the partial strike is creating a clear and present danger or threat to the health, safety or welfare of the public by jeopardizing the College's accreditation. R.R. at 17a-22a. The College requested

the trial court to order the Union to enjoin the partial strike. R.R. at 22a. In short, the gravamen of the College's Complaint seeks redress for a strike, not an unfair labor practice. Therefore, jurisdiction of the College's Complaint is vested with the trial court, not the Board.

The fact that the College also filed an unfair labor practice charge with the Board based on the same conduct does not alter our analysis. Although two causes of action may arise from the same set of operative facts, that does not mean they are the same. The PERA establishes two distinct avenues for relief based on the conduct for which redress is sought. As discussed above, the statutory provision vesting the Board with exclusive original jurisdiction over unfair labor practices does not divest the courts of jurisdiction to entertain equity actions to enjoin a strike.

Nevertheless, the Union and the trial court argue that the trial court cannot exercise jurisdiction once a labor practice charge is filed, even where the Secretary dismisses the charge. In support, they rely on *Philipsburg-Osceola*, which holds that an adverse ruling by the Secretary of the Board does not divest the Board of exclusive jurisdiction or invest jurisdiction in another forum. 633 A.2d at 224.

In *Philipsburg-Osceola*, after a strike, the union filed a charge with the Board, alleging that the school district had committed an unfair labor practice by unilaterally deducting money from members' paychecks for each day they were on strike. The Secretary of the Board refused to issue a complaint on the basis that the school district had not engaged in unlawful conduct. The union then filed the exact same claim seeking relief from the trial court. The union did not dispute the Board's jurisdiction, but rather argued that, because of the Secretary's dismissal of its charge, the trial court could now exercise equitable jurisdiction of its complaint and enjoin the school district's conduct under the Pennsylvania Wage Payment and Collection

14

Law.[9] The school district filed POs asserting that the trial court lacked jurisdiction over the dispute. The trial court overruled the POs and granted the union's request for a preliminary injunction. *Philipsburg-Osceola*, 633 A.2d at 221-23.

On appeal, we held that the trial court lacked jurisdiction over the collective bargaining dispute, even though the Secretary refused to issue a complaint on the union's charge. *Philipsburg-Osceola*, 633 A.2d at 224. We explained:

> [T]he matter did not end with the Secretary's decision. The decision included a statement that "[a]ny exceptions to this decision not to issue a complaint may be filed with the Board. . . ." The record does not show whether the [labor union] filed exceptions, though it may in fact have done so. In any event, the [union] had the right to take exceptions before the [Board] and, of course, had the additional avenue of appeal for judicial review of a [Board] decision.

*Id.* Thus, we reversed the preliminary injunction, holding that the trial court lacked jurisdiction over the dispute as it remained within the exclusive jurisdiction of the Board. *Id.* at 225.

The application of *Philipsburg-Osceola* to this case is misplaced. *Philipsburg-Osceola* holds the trial court cannot exercise equitable jurisdiction over an unfair labor practice claim that *properly belongs before the Board*, even though the Board refused to issue a complaint. 633 A.2d at 224. The case does not hold that the filing of an unfair practice claim with the Board precludes the filing of a complaint in the trial court to resolve a matter squarely within the court's jurisdiction, or vice versa. *See id.*; *see also Millcreek Township School District v. Pennsylvania Labor Relations Board*, 631 A.2d 734, 737 (Pa. Cmwlth. 1993), *appeal denied*, 641 A.2d 590 (Pa. 1994) (simply because "the same act may give rise

---

[9] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§260.1-260.45.

15

to both a violation of the collective bargaining agreement and an unfair labor practice, or that determination of whether an unfair labor practice has occurred may depend on interpretation of the collective bargaining agreement, does not oust the Board of jurisdiction").

The decision is *Philipsburg-Osceola* is premised on the doctrine of primary jurisdiction, which holds:

> [W]here an agency has been established to handle *a particular class of claims*, the court should refrain from exercising its jurisdiction until the agency has made a determination. Hence, although the court may have subject matter jurisdiction, the court defers its jurisdiction until an agency ruling has been made.

*Jackson v. Centennial School District*, 501 A.2d 218, 221 (Pa. 1985) (emphasis added). The doctrine of primary jurisdiction is not applicable here. While the Board has the authority to hear unfair labor practice disputes, it does not have the general authority to enjoin prohibited strikes under Sections 1001, 1002 and 1003. That is reserved for the courts. Sections 1001, 1002 and 1003 of the PERA, 43 P.S. §§1101.1001, 1101.1002, 1101.1003; *see Armstrong*, 595 A.2d at 1143; *City of Scranton*, 505 A.2d at 1363.

In the case before us, the College did not ask the trial court to remedy bad faith bargaining conduct. The College's Complaint does not fall within the "particular class of claims" over which the Board exercises jurisdiction. Rather, the College requested the trial court to enjoin a "strike" that was presenting a clear and present danger or threat to the health, safety or welfare of the public. This claim falls squarely within the trial court's subject matter jurisdiction under Section 1003 of the PERA. 43 P.S. § 1101.1003; *see Armstrong*, 595 A.2d at 1143. If the trial court determined assessment work was not mandatory, and there was no strike as

16

alleged, the trial court could have simply denied the relief requested. However, by deferring to the Board, the trial court abdicated its statutory responsibility to determine whether a strike is occurring and whether it presents a "clear and present danger or threat to the health, safety or welfare of the public." 43 P.S. §1101.1003. Thus, the trial court erred in granting POs on the ground that it lacked subject matter jurisdiction.

## IV. Conclusion

Accordingly, we reverse and remand the matter to the trial court for further proceedings on the College's Complaint.

_____
MICHAEL H. WOJCIK, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Community College of
Philadelphia,

          Appellant

          v.

Faculty and Staff Federation of the
Community College of Philadelphia,
Local 2026, AFT, AFL-CIO

: 
: 
: 
: 
: 
: 
: No. 1729 C.D. 2017
: 
: 
: 
: 

O R D E R

AND NOW, this 12th day of March, 2019, the order of the Court of Common Pleas of Philadelphia County (trial court), dated October 23, 2017, is REVERSED, and this matter is REMANDED to the trial court for proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge